**Eule FORD, Plaintiff,**

v.

**Leatrice J. DOWD, et al., Defendants.**

**No. 87–0822C(6).**

United States District Court,
E.D. Missouri, E.D.

Sept. 20, 1991.

---

Richard A. Barry, III, St. Louis, Mo., for Eule Ford.

Frank Susman, Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for Alvin J. Wilson and City of Pagedale, Mo.

## MEMORANDUM

GUNN, District Judge.

This matter is before the Court on defendant Alvin J. Wilson's motion for qualified immunity.

■ A government official is entitled to qualified immunity whenever his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The decision to grant qualified immunity turns on a pure question of law: whether the legal norms the defendant allegedly violated were clearly established at the time of defendant's actions. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). The law does not expect a defendant to anticipate subsequent legal developments. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

■ In this case, plaintiff Eule Ford (Ford) alleges that defendants, Alvin J. Wilson (Wilson) and the City of Pagedale, violated the fourth amendment prohibition against unreasonable searches and seizures. On January 26, 1987, Wilson, the Pagedale Chief of Police, ordered Ford, a Pagedale police officer, to submit to urinalysis. The Mayor of Pagedale (the Mayor) alleged that she initiated this order because she had received tips that Ford associated with a known drug dealer. Ford contends, however, that the Mayor's animus toward him motivated her request.

Before ordering the drug test, Wilson questioned the Mayor's decision. He felt further investigation was warranted, yet ultimately acquiesced. Ford submitted to drug testing and filed this claim alleging that he has suffered emotional upset and damage to his career as a consequence of the testing.

Defendant Wilson, as a government official, is immune from civil actions seeking damages unless he violated clearly established law.[1] When Wilson acted, however, the contours of search and seizure law were as yet unclear. *Molinelli v. Tucker*, 901 F.2d 13 (2d Cir.1990) (not clearly established in October 1986 that urine testing was a fourth amendment search). In the few federal court of appeals cases in which drug testing was challenged as an abuse of fourth amendment search and seizure law, the courts upheld its use. *See Shoemaker v. Handel*, 795 F.2d 1136 (3d Cir.), *cert. denied*, 479 U.S. 986, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986); *Division 241 Amalgamated Transit Union v. Suscy*, 538 F.2d 1264 (7th Cir.), *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976). Not until January 12, 1987 and the decision *McDonell v. Hunter*, 809 F.2d 1302 (8th Cir.1987), fifteen days before Wilson's actions, did the Eighth Circuit hold that urinalysis is a search within the meaning of the fourth amendment. Furthermore, even at this date it is not clearly established what constitutes the "reasonable suspi-

---

1. Plaintiff captioned his complaint as seeking "Damages, Declaratory and Injunctive Relief." However, the plaintiff requests only monetary damages.

cion" necessary for the use of individual urinalysis tests to survive scrutiny. Under these facts, the law was not clearly established in January 1987 and certainly not of such stature that a reasonable person would have known that Wilson's actions violated Ford's constitutional rights.

Although Wilson may have considered it imprudent to proceed without more information, that concern does not establish that he thought his acts were unconstitutional. Many acts not in the police department's best interest may not violate the Constitution. This Court can not attribute to Wilson's concern a prescience of constitutional law.

Therefore, defendant Wilson's motion for qualified immunity is hereby granted in accordance with the foregoing reasons.